UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| KEITH SYLVESTER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JAMES BARNETT, and<br>DARREN SMITH,<br>　in their individual capacities,<br><br>　　　　Defendants. | CIVIL ACTION<br><br>FILE NO. 1:19-cv-4300-LMM<br><br>**JURY TRIAL DEMANDED** |

## AMENDED COMPLAINT

Plaintiff, for the first time represented by counsel, submits this amended complaint for damages, showing that he was prosecuted for two murders without probable cause, based on Defendants' deliberate and reckless material fabrications, falsehoods, and omissions.

Counsel for Defendants provided consent for this amendment in a conference call August 5, 2020, such that this amendment comports with Federal Rule of Civil Procedure 15. This amendment moots Defendants' motion to dismiss and for a more definite statement.[1] Doc. 34.

---

[1] An amended complaint supersedes the original complaint, and thus renders moot a motion to dismiss the original complaint. *See Dresdner Bank AG v. M/V Olympia Voyager*, 463 F.3d 1210, 1215 (11th Cir. 2006).

## JURISDICTION AND VENUE

1. This is a civil and constitutional rights action arising under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution. This Court has jurisdiction of federal claims under 28 U.S.C. §§ 1331 and 1343.

2. Venue in this Court is proper 28 U.S.C. § 1391 because the events giving rise to Plaintiff's claims arose in this district and division.

## PARTIES

3. Plaintiff Keith Sylvester is a United States citizen and resident of Georgia.

4. Defendant James Barnett is sued in his individual capacity. At all times relevant to this complaint, Defendant Barnett acted under the color of law and within the scope and authority of his employment as a law enforcement officer for the Atlanta Police Department.

5. Defendant Darren Smith is sued in his individual capacity. At all times relevant to this complaint, Defendant Barnett acted under the color of law and within the scope and authority of his employment as a law enforcement officer for the Atlanta Police Department.

## FACTUAL ALLEGATIONS

6. In the early morning hours of July 3, 2018, there was a house fire at a home in western Atlanta, near Douglass High School, which was owned by Deborah Hubbard.

7. When emergency responders arrived, the burned bodies of Deborah and Harry Hubbard were found inside.

8. Plaintiff Keith Sylvester is the son of Deborah Hubbard.

9. Harry Hubbard was Plaintiff's step-father.

10. On December 28, 2018, Defendant James Barnett sought and obtained an arrest warrant for Plaintiff for the murder of Deborah and Harry Hubbard.

11. The warrant was obtained following an investigation undertaken by Defendant Barnett and Defendant Darren Smith.

12. Barnett and Smith worked on the investigation together throughout all stages.

13. Plaintiff was arrested and jailed for approximately fifteen months.

14. On March 2, 2020, all charges against Plaintiff were dismissed because Plaintiff was "not present at the scene" during the commission of any crime and was thus innocent of all charges.

15. Defendants violated clearly established law when they obtained a warrant without probable cause based on deliberate and reckless material falsehoods and omissions. *See, e.g.*, *Kelly v. Curtis*, 21 F.3d 1544 (11th Cir. 1994).

16. Defendants also violated clearly established law when they obtained a warrant that obviously lacked probable cause on its face. *See, e.g.*, *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

PLAINTIFF'S LOCATION PROVED HE DID NOT COMMIT ANY CRIME

17. Barnett and Smith knew that Plaintiff had not entered the home during a time frame where he could have caused the fire.

18. Specifically, Barnett and Smith knew that the fire had started at approximately 4:30am on July 3, 2018.

19. Barnett and Smith knew from multiple sources that Plaintiff did not go into the home for at least the eight hours preceding the fire.

20. One source was Plaintiff's cell phone location records which Barnett and Smith had obtained no later than July 12, 2018 via a forensic analysis of Plaintiff's cell phone.

21. Another source was video from a dash camera on Plaintiff's vehicle that showed his movements throughout the night of July 3, 2018, specifically showing he did not go into the home for at least the eight hours preceding the fire.

22. A third category of exculpatory evidence related to Plaintiff's location was surveillance video from convenience stores on the night and early morning hours of the fire.

23. During some of the hours preceding the house fire, Plaintiff was playing video games in convenience stores.

24. Plaintiff told Barnett and Smith about where he was and when he was there.

25. Barnett and Smith obtained and viewed the surveillance video from the convenience stores that corroborated the fact that Plaintiff was away from the home in the hours preceding the fire.

26. Barnett and Smith deliberately and recklessly failed to include these facts related to Plaintiff's location on the night and early morning of the fire in the warrant affidavit.

27. These facts related to Plaintiff's location were readily available wholly exculpatory evidence.

28. Instead, Barnett and Smith fabricated evidence when the warrant affidavit falsely swore that Plaintiff was the only person with the opportunity and ability to have committed the offense.

## INTENTIONAL FALSEHOODS AND OMISSIONS ABOUT THE FIRE

29. Barnett and Smith stated in the warrant affidavit that Plaintiff had purchased mothballs and rubbing alcohol at a Walmart with his parents on July 2, 2018 before the fire in early morning hours of July 3, 2018.

30. Barnett and Smith also stated in the warrant affidavit that the mothballs and rubbing alcohol could have been used as an accelerant in the fire without leaving a trace.

31. But Barnett and Smith knew that the single package of mothballs that was purchased was inside the house, intact, and unopened even after the fire had burned portions of the home.

32. Barnett and Smith further knew that the rubbing alcohol purchased was at Plaintiff's home, meaning that it had not been used as an accelerant.

33. Despite knowing about the mothballs and the rubbing alcohol, Barnett and Smith deliberately failed to provide the critical facts that these items were not used in the house fire.

34. By including the facts about the purchase and possible use of the mothballs and rubbing alcohol in the warrant affidavit, and by failing to include the facts showing that these items were not used in the fire, Barnett and Smith deliberately mislead the magistrate.

35. Barnett and Smith deliberately omitted known facts showing that there was no evidence of any accelerant used in the house fire.

36. Barnett and Smith knew that a K-9 trained to detect accelerant and other signs of arson had sniffed the home after the fire and found no evidence of accelerant or arson.

37. Barnett and Smith deliberately omitted from the warrant affidavit the fact that a K-9 trained to detect accelerant and other signs of arson had sniffed the home after the fire and found no evidence of accelerant or arson.

38. Barnett and Smith knew that Plaintiff came to the home as soon as he learned about the fire from a neighbor and that he arrived shortly thereafter.

39. Barnett and Smith knew that Plaintiff was wearing the same clothes when he came to the house after the fire as he had been wearing earlier in the evening, with the exception of his t-shirt which he had changed when he got back to his home.

40. Barnett and Smith knew that there was no evidence of smoke, fire, accelerant, blood, struggle, or anything else incriminating on the clothing that Plaintiff was wearing.

41. Barnett and Smith also knew that Plaintiff's t-shirt he had been wearing earlier in the evening was at his home, unwashed, in his dirty clothes bin.

42. Barnett and Smith knew that there was no evidence of smoke, fire, accelerant, blood, struggle, or anything else incriminating on the t-shirt Plaintiff wore earlier in the night.

43. Similarly, Barnett and Smith knew that there was no evidence of smoke, fire, accelerant, blood, struggle, or anything else incriminating apparent from Plaintiff when he was examined at the house after the fire.

44. Barnett and Smith knew that a K-9 trained to detect accelerant and other signs of arson had sniffed Plaintiff when he was examined at the house after the fire and found no signs of accelerant or arson on Plaintiff.

45. Barnett and Smith knew there was no way that Plaintiff could have strangled two persons and set fire to the home without there being any trace of evidence of smoke, fire, accelerant, blood, struggle, or anything else incriminating on his clothing or his person.

46. Barnett and Smith deliberately omitted from the warrant affidavit the fact that a K-9 trained to detect accelerant and other signs of arson had sniffed Plaintiff and found no evidence of any connection to the house fire.

47. Barnett and Smith deliberately omitted from the warrant affidavit the known facts showing that there was no evidence of smoke, fire, accelerant, blood, struggle, or anything else incriminating on Plaintiff's clothing or person, even

though they knew such evidence would be present had Plaintiff committed the strangulations and arson as set forth in the warrant affidavit.

48. Absent the deliberately false facts about the mothballs and rubbing alcohol, there was not a single piece of evidence in the warrant tending to show that the house fire was caused by arson.

FORENSIC EVIDENCE WAS INCONSISTENT WITH STRANGULATION

49. In the warrant affidavit, the only evidence that Deborah Hubbard was strangled was that there were wires from a cable junction box around her neck when she was found deceased.

50. Barnett and Smith knew that Deborah Hubbard had not been strangled with the wires from a cable junction box and they knew that the wires were not wrapped around her neck.

51. Barnett and Smith knew that the wires were not around her neck but were instead "just laying on top of her" because the wires had fallen from above in the course of the fire.

52. In the warrant affidavit, there was no evidence whatsoever tending to show that Harry Hubbard had been strangled.

53. At the time of the warrant affidavit, Barnett and Smith knew that autopsies of the Hubbards showed there was a large quantity of soot in their lungs

post-mortem, which showed that they were alive and breathing at the time of the fire, which is inconsistent with strangulation.

54. At the time of the warrant affidavit, Barnett and Smith knew that the Hubbards had very elevated carboxyhemoglobin saturation levels, showing that carbon monoxide was in their bloodstream, which is consistent with death from smoke inhalation and inconsistent with strangulation.

55. At the time of the warrant affidavit, Barnett and Smith knew that, especially for Deborah Hubbard, her carboxyhemoglobin saturation level was so high as to be fatal, which is inconsistent with strangulation.

56. At the time of the warrant affidavit, Barnett and Smith knew that the examination of the Hubbards' bodies post-mortem revealed the conspicuous absence of the hallmark forensic signs of strangulation.

57. Barnett and Smith knew that one piece of missing evidence was internal hemorrhaging around the necks of the Hubbards.

58. Barnett and Smith knew that Deborah Hubbard's neck lacked transverse hemorrhaging, which is characteristic of strangulation by ligature.

59. Barnett and Smith knew there was no evidence of hemorrhaging in Harry Hubbard's neck and no evidence of any soft tissue injury upon layer by layer dissection of his neck tissue.

60. Barnett and Smith knew that evidence of hemorrhaging and other soft tissue injury to the neck is characteristic of strangulation.

61. Barnett and Smith knew that the absence of evidence of hemorrhaging or other soft tissue injury from both of the Hubbards was inconsistent with strangulation.

62. Barnett and Smith also knew that examination of the bone and cartilages of the Hubbards' necks was inconsistent with death by strangulation.

63. Barnett and Smith knew that for both Deborah Hubbard and Harry Hubbard, their hyoid bones and their laryngeal cartilages were intact and free of injury.

64. Barnett and Smith knew that injury to the hyoid bone and laryngeal cartilages is characteristic of strangulation, and that the absence of any injury to either the hyoid bone *or* the laryngeal cartilages *in both* Deborah Hubbard and Harry Hubbard meant it was very highly unlikely, if not impossible, that the Hubbards were strangled.

65. Barnett and Smith knew that both Deborah Hubbard and Harry Hubbard suffered thermal injuries and smoke inhalation that was more than sufficient to cause their death.

66. In the warrant affidavit, Barnett and Smith deliberately and recklessly failed to include any of the known forensic facts showing that the Hubbards' autopsy revealed findings that were inconsistent with strangulation.

67. Instead, Barnett and Smith deliberately falsely stated that the Hubbards died by strangulation.

68. Barnett and Smith deliberately falsely stated that Deborah Hubbard was strangled using cables that Barnett and Smith knew were not used to strangle her.

69. Barnett and Smith also knew that there were no signs of struggle inside the home, such as damage to drywall or furniture, and that such signs of struggle would be expected where one person was strangled followed by another person being strangled.

70. Despite knowing that there were no signs of struggle inside the home, and that such signs would be expected, Barnett and Smith deliberately omitted these material exculpatory facts from the warrant affidavit.

71. In the warrant affidavit, Barnett and Smith provided no evidence whatsoever that Harry Hubbard was strangled, such that no reasonable officer would believe that a warrant could issue charging Plaintiff with having strangled him.

72. Had Barnett and Smith included the known exculpatory facts regarding the lack of evidence of strangulation for the Hubbards, no warrant would have issued.

INTENTIONAL FALSEHOODS AND OMISSIONS ABOUT MOTIVE

73. Barnett and Smith deliberately included information they knew to be false in the warrant affidavit about Plaintiff's supposed motive to kill his mother and his stepfather.

74. For example, Barnett and Smith deliberately falsely stated that Deborah Hubbard had a homeowner's insurance policy for which Plaintiff was the sole beneficiary.

75. But Barnett and Smith knew that the homeowner's insurance policy did not list Plaintiff as a beneficiary.

76. Barnett and Smith also knew that Deborah Hubbard did not have a will—much less a will that treated Plaintiff differentially and preferentially from his multiple siblings or from Harry Hubbard's children—such that Plaintiff would not be lawfully entitled to the proceeds of the homeowner's insurance policy as was falsely stated in the warrant affidavit.

77. Barnett and Smith also deliberately omitted readily available exculpatory information regarding motive. For example, Deborah Hubbard had

come to live in Atlanta to move away from Harry Hubbard who remained in Buffalo, NY.

78. Family members knew that in addition to the Hubbards being estranged at the time of their death, Harry Hubbard also had a history of abusive behavior including instances where he would yell and scream at his wife, instances where she was threatened following his infidelity, and instances where she would be found inexplicably on the floor.

79. The pattern of abusive behavior and threats was not included in the warrant affidavit even though it was known by Barnett and Smith and otherwise readily available.

80. Instead of providing truthful facts regarding the insurance policy and otherwise fully disclosing the facts related to motive, Barnett and Smith falsely stated in the warrant that Plaintiff was the only person with the motive to kill the Hubbards.

## COUNT I
*Illegal Seizure under 42 U.S.C. § 1983*
*Fourth and Fourteenth Amendments*

81. Plaintiff was arrested pursuant to false information supplied to the magistrate by Defendants, despite evidence that unquestionably demonstrated Plaintiff's actual innocence.

82. Defendants intentionally or recklessly ignored the clear evidence of Plaintiff's innocence and unlawfully caused Plaintiff to be arrested and jailed for a crime he did not commit.

83. Defendants failed to provide material information that they knew showed Plaintiff's actual innocence, including facts about Plaintiff's location, the lack of evidence of arson, the lack of evidence of strangulation, and the lack of evidence of motive.

84. At no point did any evidence exist that approached probable cause for Plaintiff's arrest.

85. At no point did any evidence exist that approached probable cause to believe that anyone had committed any crime.

86. Defendants failed to conduct a reasonable investigation prior to supplying the magistrate with false information including, among other deficiencies, failing to explore other possible suspects, failing to find any evidence of motive, and failing to find any evidence of arson.

87. Defendants knew that their false and reckless actions would result in Plaintiff's incarceration.

88. Defendants' actions were the proximate cause of Plaintiff's warrant, arrest, and incarceration.

89.   Prior to his arrest, Plaintiff had not committed any offense or violated any rule or regulation that would authorize his arrest.

90.   Defendants knowingly and willfully acted in the complete absence of probable cause and with malice in causing Plaintiff to be arrested and jailed for a crime he did not commit.

91.   Plaintiff's seizure and prosecution terminated in his favor when all charges were dismissed as a reflection of the merits of the charges.

92.   Plaintiff suffered significant damages as a result, including monetary and emotional losses and the extended loss of liberty.

93.   Plaintiff continues to be humiliated given the online presence of news reports showing he was arrested for heinous crimes against his own family.

94.   Under the facts and circumstances alleged herein, objectively reasonable law enforcement officers would have known that causing a citizen to be arrested under these circumstances violated the Fourth and Fourteenth Amendments of the United States Constitution.

### COUNT II
*Denial of Due Process under 42 U.S.C. § 1983*
*Fourteenth Amendment*

95.   Defendants acted with deliberate indifference to Plaintiff's rights by ignoring the evidence that Plaintiff had not committed any crime.

96. Defendants' actions in ignoring clear evidence of actual innocence and arresting Plaintiff for a crime he did not commit, furthers no government interest and shocks the conscience.

97. Defendants failed to disclose known exculpatory evidence to the prosecutor's office in violation of e.g., *Brady v. Maryland*, 373 U.S. 83 (1963).

98. Had Defendants properly disclosed the known exculpatory evidence, the prosecution against Plaintiff would have ceased significantly earlier or Plaintiff would have been able to have been released on bond as a reflection of the lack of merit of the charges.

## COUNT III
### *Punitive Damages under 42 U.S.C. § 1983*

99. Defendants acted with conscious indifference, reckless disregard for the consequences of her actions, an intent to injure, and malice, such that an award of punitive damages is authorized.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests this Court:

a) Hold a trial by jury on all issues so triable;

b) Award nominal, compensatory, special, and punitive damages to Plaintiff against Defendants in an amount to be proven at trial;

c) Award Plaintiff attorneys' fees under 42 U.S.C. § 1988;

d) Tax all costs of this action against Defendants; and

e) Award any additional or alternative legal or equitable relief that is just and appropriate.

Respectfully submitted, this 7th day of August, 2020

                                 */s/Zack Greenamyre*
                                 Zack Greenamyre
                                 Georgia Bar No. 293002

                                 */s/Samantha Funt*
                                 Samantha Funt
                                 Georgia Bar No. 943783

                                 MITCHELL & SHAPIRO LLP
                                 3490 Piedmont Road, Suite 650
                                 Atlanta, Georgia 30305
                                 Phone: 404-812-4747
                                 Fax: 404-812-4740
                                 zack@mitchellshapiro.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing has been prepared in compliance with Local Rule 5.1(B) in Times New Roman 14-point typeface.

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

> Kareemah L. Lewis
> Reginald Martin

This 7th day of August, 2020.

> */s/Zack Greenamyre*
> Zack Greenamyre
> Georgia Bar No. 293002