# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| KEITH SYLVESTER,<br><br>    Plaintiff,<br><br>v.<br><br>JAMES BARNETT, individually,<br><br>    Defendant. | CIVIL ACTION FILE<br>NO. 1:19-cv-4300-LMM |

## PLAINTIFF'S OBJECTION TO REPORT AND RECOMMENDATION

Plaintiff Keith Sylvester respectfully objects to the final report and recommendation ("R&R"), Doc. 119, that recommended granting Defendant Barnett's motion for summary judgment.

In short, the R&R failed to account for the basic fact that Barnett knew, or reasonably should have known, that Plaintiff could not possibly have committed the crimes alleged. Among other facts, Barnett knew Plaintiff was last in the home no later than 8:00pm. *After* that time, the decedents spoke on the phone with a family member in Buffalo. In that call, Harry Hubbard said he was "fine" and gave no indications of distress. Barnett knew about this call from his review of the phone records that he subpoenaed and from his interview with Nyaira Walton, who was on the other line. Based on this evidence, Barnett knew (a) that neither

Hubbard had been strangled to the point of unconsciousness and (b) that the house was not on fire, *after* Plaintiff was last in the home. Barnett did not disclose to the magistrate that it was physically impossible for Plaintiff to have strangled his parents or set their home on fire given the timeline. Had he made such a disclosure, there would have been no probable cause and Plaintiff would not have been jailed for fifteen months for crimes he did not commit.

In addition to the arguments and facts set out in his opposition to summary judgment, Docs. 113, 113-1, 113-2, Plaintiff has the following specific objections which are procedural, factual, and legal.

## I.   PROCEDURAL OBJECTIONS

First, while Plaintiff recognizes the extensive efforts involved in the R&R's "independent review" of the record, *see* Doc. 119 at 7, Plaintiff objects to going beyond the facts and evidence presented by the parties. Beyond the evidence submitted to the Court for summary judgment, there are a slew of other materials exchanged in extensive discovery. And, while a deponent may make a statement in a deposition, that statement may be contradicted elsewhere in materials that the parties may or may not have put in the record at summary judgment.

Second, Plaintiff objects to the Court not deeming Plaintiff's material facts as admitted for purposes of summary judgment. Defendant did not respond to

Plaintiff's statement of material facts. *See* Doc. 119 at 6 n.2. This failure is contrary to the requirements of Fed. R. Civ. P 56(c) & (e), as well as Local Rule 56.1(B)(3) ("[T]he movant *shall* file a response . . . .") (emphasis added). Plaintiff's facts are supported by citation to the record, and thus should be deemed admitted for purposes of Defendant's motion.[1]

Third, Plaintiff objects to any exclusion of Plaintiff's responses to Defendant's statement of facts or Plaintiff's additional facts, to the extent the R&R intended to do so. The R&R found certain unspecified statements and responses lengthy, argumentative, and immaterial, and stated that it "could exclude" several responses, but not that it was doing so. Doc. 119 at 6. Plaintiff objects to any such exclusion. As to the responses to Defendant's facts, the length of Plaintiff's responses was necessitated by Defendant lumping many facts into a single paragraph. *See* Doc. 101-1 ¶ 10 (summarizing dozens of conversations into a single paragraph); ¶ 11 (three discrete facts).[2] As to Plaintiff's statement of facts, where

---

[1] *See Chastain v. Physicians Hair Transplant Ctr., Inc.*, No. 1:20-CV-1315-TWT, 2022 WL 19388, at *1 (N.D. Ga. Jan. 3, 2022) (taking "Defendants' silence as a concession" and citing other cases so holding).

[2] *Cf. Randazzo v. Fisher*, No. 1:20-CV-1917-CAP, 2022 WL 841757, at *2 (N.D. Ga. Mar. 9, 2022) (overruling similar objection: "While the court agrees with the defendant that some of the plaintiff's responses are long-winded, the court recognizes the credibility issues at play and appreciates the thoroughness of the plaintiff's answers.").

the relevant inquiry is the totality of circumstances, and where a large amount of evidence was uncovered in investigation before and after the warrant, the evidence is inherently likely to be voluminous.

Fourth, Plaintiff objects to the R&R, in full, on the basis that this action, at least once amended, Doc. 40, did not satisfy this Court's requirements for referral under Standing Order 18-01(I)(8) (prisoner actions) or (II) (consent).

## II.   FACTUAL OBJECTIONS

Pursuant to this Court's order, Doc. 122, Plaintiff has filed a response to the facts raised in the R&R and not cited by Defendants.

Beyond those facts, Plaintiff has additional factual objections, which primarily involve the R&R's viewing the evidence in a light other than the one most favorable to Plaintiff. *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

Plaintiff objects to the R&R's statements that the record belies any intentional conduct or "nefarious actions" on the part of Defendant. *See* Doc. 119 at e.g., 8–9, 39–40, 45 n.29. Taking Plaintiff's facts as supported by the record as true, and making reasonable inferences therefrom, a reasonable jury could find that Defendant Barnett *knew* that, among other facts: (a) Plaintiff did not, and could not have, strangled the Hubbards; (b) Plaintiff did not, and could not have, set the fire; (c) Plaintiff was not the sole beneficiary of any insurance policy; (d) the materials

Defendant said Plaintiff bought to set the fire were not used in the fire. Despite knowing these facts, Defendant swore to the opposite of these facts in the warrant application. When an officer knows a fact is not true, but swears it to be true in order to cause a prolonged detention, a reasonable jury could find intentional misconduct—and not mere negligence. Furthermore, where a factfinder can reasonably conclude that a party has intentionally provided false testimony, the factfinder can reject even uncontroverted testimony.³

Plaintiff objects to the R&R's rejection of the evidence showing Defendant knew there was no "slow burn" fire. *See* Doc. 119 at 24–25, 44. The R&R disregarded this evidence because Defendant wrote in his police report that he did not learn it was not a slow burn fire that could have been started before Plaintiff last left the home at 8:00pm until after he procured the warrant when he called and asked an arson investigator about it. *Id.* at 24. But Defendant *knew* it was not a slow burn from other evidence, including (a) the 9:20pm call between Nyaira Walton and Harry Hubbard when the home was clearly not on fire; (b) that a slow burn fire is inherently contradictory to Defendant's claim in the warrant application

---

³ *The Santissima Trinidad*, 20 U.S. 283, 339 (1822) ("[A]pply the maxim *falsus in uno, falsus in omnibus*.").

that an accelerant was used;[4] and (c) that Defendant knew the Hubbards were alive during the fire, and that people who are strangled to unconsciousness but not death quickly regain consciousness, meaning that the Hubbards would have removed the ligatures and left the home if the fire was started before 8:00pm. Furthermore, the arguable probable cause analysis charges Defendant with this knowledge because it was readily available at the time.[5] Defendant provided no explanation as to why he failed to run his outlandish theory by the arson investigators *prior* to obtaining the warrant, even though he testified to numerous conversations with them.

Plaintiff objects to the R&R's inconsistent treatment of the presence and absence of various recordings. In some instances, the R&R incorrectly presumes that the full universe of interactions were recorded, preserved, and presented to the Court on summary judgment, such that facts submitted by Plaintiff are belied by the recordings and susceptible to being disregarded. *See* Doc. 119 at 9 (rejecting contention that Defendant fed false facts to family members because not present in recordings); *id.* 9–10 & n.4 (rejecting Jenkins declaration on assumption that full

---

[4] Dorgan also said a slow burn fire is inconsistent with the arson evidence that there were two points of origin. Doc. 101-2 at 18.

[5] *See Kingsland v. City of Miami*, 382 F. 3d 1220, 1229, 1233 (11th Cir. 2004) (citing *Sevigny v. Dicksey*, 846 F. 2d 953 (4th Cir. 1988) (analysis "must charge [officer] with possession of all information reasonably discoverable by an officer acting reasonably").

conversations recorded and presented); *id.* at 21 (rejecting fact that Plaintiff could have felt like a suspect based on several recorded minutes of interactions that lasted hours). In each instance, there is concrete reason for a jury to conclude that portions of the relevant interactions were either not recorded, or, if recorded, were not preserved. For the calls with family members, it does not appear that initial calls were recorded where Defendant introduced himself and the basic facts. Instead, the recordings often reference previous calls or messages between the speakers. And for the body camera evidence, not only is it readily apparent that the video does not capture all of what happened, it is also clear that everything recorded was not produced.[6]

  Confoundingly, elsewhere the R&R credits Defendant's statement, which was not captured on any recording, that a USAA agent told him on the phone that she harbored suspicions of Plaintiff, even though the record reflects that such calls

---

[6] The video called "33D-6.mp4" or "33D-7.mp4" starts, and audio is heard immediately. The way the APD body cameras work is that when an officer activates the camera, the preceding two minutes of video are captured, but audio is only preserved *after* the activation. *See* Barnett Dep. 182:14–183:11. Thus, videos will have two minutes of silent video before the sound activates. *See* Exhibit V, 33D-4.mp4 at 1:55–2:05. The video will also show the officer activating the camera by touching it. *Id.* Based on the partial video, as shown by the conversation in progress and the video recording conventions, it is clear that not all of the interactions between Plaintiff and law enforcement were recorded.

should have been recorded by both Defendant and USAA. *See* Doc. 119 at 26 n.18.[7]

Plaintiff objects to the R&R's treatment of the accelerant evidence and lack thereof. Doc. 119 at 23–24, 42. Defendant stated in the warrant application that the fire was started by accelerants, to wit: citronella candles, mothballs, and rubbing alcohol that Plaintiff had purchased the preceding afternoon from Walmart. Plaintiff submitted evidence showing that Defendant knew that was incorrect because (a) Plaintiff would have had alcohol on his person and vehicle that would have been sniffed out by the trained K9; (b) the purchased mothballs and rubbing alcohol were unopened; (c) the citronella candles were not used in the fire; (d) the use of accelerant was inconsistent with Defendant's slow burn fire theory; and (e) at the time of the warrant, the arson investigators told him there was no accelerant used in the fire. *See* Doc. 113-2 at ¶¶ 27–36, 79; Barnett Dep. 85:13–15. At one point, the R&R stated that Defendant reasonably believed an accelerant was used,

---

[7] Although the R&R posits that it is not certain that such a call would have recorded, there is sufficient evidence that if that call happened as Defendant related, there would be at least one recording of it. One call between these people was recorded. *See* Exhibit T, Sylvester Janka Transcript.

A jury could also find Defendant was not truthful where there is direct evidence he lied about getting this fact from another source. Defendant testified he received this information from the arson investigators, who were categorical in stating they did not tell Defendant Plaintiff was the sole beneficiary. *See* Doc. 113-2 at ¶¶ 94–96; *see also* n.3 ("*falsus in uno, falsus in omnibus*").

such that his statements in the warrant did not violate *Franks*. *See* Doc. 119 at 24. But, in the next paragraph, the R&R recognized that arson investigators told Defendant the fire was started *without* the use of accelerants before the warrant.

Plaintiff objects to the R&R's treatment of the insurance evidence. Doc. 119 at 26–30. The R&R acknowledged Defendant's false statements in the warrant application, but attempted to excuse them by stating that Defendant's false statement that Plaintiff was the sole beneficiary of the homeowner's policy was not "salient," and that the amount of any proceeds was not material.[8] Consistent with Defendant's theory that Plaintiff was motivated to murder his parents for money, and his statement in the warrant application that Plaintiff was the only person with such a motive, the facts of the policy are relevant. If Plaintiff should have received approximately $2,000 (representing less than two weeks' of his wages), instead of $180,000 (or what a reasonable person would understand to be the full value of a homeowner's insurance policy), the motive at play is fundamentally altered.

Plaintiff objects to the R&R's crediting of various statements that Plaintiff did not act appropriately for someone who had just lost his parents. No person at

---

[8] Defendant repeated the false statement that Plaintiff was the sole beneficiary at the preliminary hearing where he also testified that Plaintiff's payout would have been between $150,000 and $200,000. *See* Doc. 113-12 at 12:15–23.

the scene had ever met Plaintiff, and no person would have any basis to determine whether his reaction to this trauma was appropriate.[9]

Plaintiff disputes the R&R's conclusion that he has not provided evidence to dispute Defendant's fact about the "majority" of family members stating that "Plaintiff was, or could have been, at least partly responsible for the arson and double-homicide." Doc. 119 at 29. In addition to Plaintiff's opposition in Doc. 113-1 ¶ 10, Plaintiff cites to Doc. 113-2 ¶¶ 222–227, which summarizes evidence showing that the family believed objectively ridiculous facts about what happened. *See id.* (Willie Jenkins killed the Hubbards from Buffalo; Tanika Hubbard committed the murders despite not being in Atlanta; Deborah was a "black widow" who killed her three previous husbands; Plaintiff harvested all of Deborah's teeth). The unreliable nature of these narrators was not disclosed. *Cf. Hincapie v. City of New York*, 1:18-cv-3432-PAC, Doc. 197, at *28 (S.D.N.Y. July 21, 2022) (denying summary judgment in malicious prosecution case and holding that fabrication plus

---

[9] *Cf. Harris v. State*, No. S22A0092, 2022 WL 2230373, at *32 (Ga. June 22, 2022) ("The witnesses and police officers who testified that they found Appellant's emotional response to be strange also acknowledged that they did not know Appellant or how he reacted to trauma. . . . Moreover, the witnesses' testimony about how they believed a man who has just [suffered trauma] should act was inconsistent – with some witnesses asserting that Appellant was acting too 'hysterical' or 'frantic' to be genuine, while other witnesses asserting that his 'calm' demeanor was unexpected.") (alteration adopted).

"the general confusion and discord" amongst witnesses did not give rise to probable cause).[10]

Finally, Plaintiff objects to the R&R's treatment of each fact in isolation. A reasonable jury would be entitled to consider Defendant's conduct in context, with each falsehood or omission from the warrant building on the next to give rise to an increasingly inescapable inference of intentionality. Instead, the R&R seemed to consider each fact in isolation before concluding that Defendant acted "at most" negligently. Doc. 119 at 40.

## III. LEGAL OBJECTIONS

Finally, Plaintiff has three legal objections: First, the R&R erred by applying the *arguable* probable cause standard to Plaintiff's *Franks* claim premised on intentional false statements and material omissions. *See* Doc. 119 at 10. Because it has long been clearly established that an officer cannot intentionally or recklessly lie to arrest someone without probable cause, qualified immunity is inappropriate where there is an absence of *actual* probable cause.[11] The R&R only found that

---

[10] Further, the "majority" aspect of this fact is not supported because there is no denominator as to who in the family Defendant spoke to and some conversations were either not recorded or not provided.

[11] *Williams v. Aguirre*, 965 F.3d 1147, 1169 (11th Cir. 2020) (applying actual probable cause standard); *see also* Doc. 113 at 29–31 (noting two routes to pierce qualified immunity for seizures based on warrants); *Walker v. Sinclair*, 4:20-cv-126-TWT, Doc. 38 at *14 (N.D. Ga. May 4, 2021) ("[A]ny warrant based on such

arguable probable cause existed, which coupled with evidence of intentional misstatements, is sufficient to deny Defendant's motion.

Second, assuming without conceding that an officer might get to probable cause by taking selected portions of the evidence in isolation, the R&R erred by ignoring evidence that before he obtained a warrant Defendant *knew*, and any reasonable officer must have known, that Plaintiff could not possibly have committed the crimes charged. Between the evidence of (a) Plaintiff's location—which Defendant acknowledges showed Plaintiff did not enter the house after 8:00pm; (b) the Walton phone call at 9:20pm showing the Hubbards were alive after 8:00pm; (c) the facts disproving a slow burn fire; and (d) the fact that the Hubbards were alive during the fire, meaning that they could not have been strangled before 8:00pm; Defendant knew beyond a reasonable doubt that Plaintiff did not strangle his parents or set their home on fire.

It is well established that even a single wholly exculpatory fact can vitiate probable cause that otherwise would be present. This case is a much easier call than the case of the exculpatory tattoo in *Cozzi v. City of Birmingham*, 892 F.3d 1288 (11th Cir. 2018). In that case, there was not even arguable probable cause

---

reckless factual omissions violates clearly established Eleventh Circuit precedent.").

where "the perpetrator's multiple tattoos [as observed in video] did not match Cozzi's single tattoo."[12] Here, Plaintiff's innocence was overdetermined by the multiple, independently sufficient facts identified above.

Plaintiff generally agrees that "an officer is not required to rule out a suspect's innocent explanation for suspicious facts, resolve inferences and factual conflicts in favor of the suspect, resolve issues of credibility, eliminate every theoretical plausible claim of innocence, or consider the validity of a possible defense." Doc. 119 at 43–44. But, it is also true that an "officer may not turn a blind eye to evidence suggesting that a suspect is innocent by choosing to ignore information that has been offered to him or her or by electing not to obtain easily discoverable facts." *Cozzi*, 892 F.3d at 1297 (cleaned up). Here, as in *Cozzi*, "[d]espite having been given plainly exculpatory and easily verifiable information, [the Defendant failed to consider that evidence] before arresting [the Plaintiff]. Under our precedent, this failure was unreasonable. Where a police officer unreasonably disregarded certain pieces of evidence to establish probable cause or arguable probable cause, reasonable officers in the same circumstances and

---

[12] *Id.* at 1297 ("We need not decide whether the evidence Thomas possessed . . . was sufficient to establish arguable probable cause because we must also consider the information tending to exculpate Cozzi that was available to Thomas when he made the arrest.").

possessing the same knowledge as the officer could not have believed that probable cause existed to arrest the plaintiff." *Id*. (cleaned up).

Here, it was not Plaintiff who was protesting that he was not at the scene, that Harry was communicating with Nyaira Walton, that there was no slow burn fire, and that the Hubbards were alive during the fire. Except for the location information, there was no indication Plaintiff even knew these facts. Instead, each of these facts was learned through *Defendant's* efforts. *Defendant* subpoenaed the phone records, which included GPS location data for Plaintiff and the Hubbards, as well as the records of the Walton phone call. *Defendant* interviewed Ms. Walton, who told him about the 9:20pm phone call. *Defendant* looked into the use of accelerants and whether the fire was a slow burn. And *Defendant* learned through conversation with the medical examiner that the Hubbards were alive during the fire. Defendant had no conflicting witness statements or any other basis to disbelieve any of these facts. These are facts Defendant subjectively knew. Disregarding them, or affirmatively hiding them from the magistrate, is not reasonable under the Fourth Amendment.

This case is also like *Barnett v. MacArthur*, 956 F.3d 1291 (11th Cir. 2020). When an officer has probable cause at one time, before a warrant is obtained, but then "seek[s] and obtain[s] information which shows beyond a reasonable doubt

that the [suspect is innocent,]" probable cause "no longer exists." *Id.* at 1299. Whether or not some combination of facts amounted to probable cause at some point in time, at the time of the warrant, Defendant had sought and obtained information proving Plaintiff did not commit the offenses charged.[13]

Plaintiff's third legal objection is to the rejection of his Due Process Clause claim based on the factual assertion that there is no evidence that Defendant fabricated evidence. Doc. 119 at 45 n.29. Plaintiff detailed ten facts that a jury could find were knowingly false that were contained in his warrant application (and then repeated in his narrative report). *See* Doc. 113 at 32-33. Plaintiff further detailed twenty-five material omissions from the warrant application. *See id.* at 34–36. This is sufficient evidence for a reasonable jury to find fabrication. And based on the cases cited in his brief opposing summary judgment, *see* Doc. 113 at 42–44, on his facts Plaintiff has stated a viable Due Process claim.

## CONCLUSION

This Court should sustain the objections to the R&R and deny Defendant Barnett's motion for summary judgment.

Respectfully submitted, this the 26th day of July, 2022.

---

[13] Defendant did not disclose to the magistrate any belief that Plaintiff had arranged for some unknown other person to have killed the Hubbards, and there is absolutely zero evidence to support such a theory.

-15-

*/s/ Zack Greenamyre*
Zack Greenamyre
Ga. Bar No. 293002
Samantha Funt
Georgia Bar No. 943783
MITCHELL & SHAPIRO LLP
3490 Piedmont Road, Suite 650
Atlanta, GA 30305
404-812-4751
zack@mitchellshapiro.com
sam@mitchellshapiro.com

## CERTIFICATE OF COMPLIANCE

Counsel hereby certifies that this document has been prepared in compliance with Local Rule 5.1C using 14-point Times New Roman font.

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing using the CM/ECF system, which will send notification of filing to all counsel of record.

This the 26th day of July, 2022.

*/s/ Zack Greenamyre*
Zack Greenamyre
Ga. Bar No. 293002