## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

KEITH A. SYLVESTER,                    :
     Plaintiff,                          :
                       :          CIVIL ACTION NO.
     v.                                  :          1:19-CV-4300-LMM
                       :
JAMES BARNETT, et al.,                 :
     Defendants.                         :

### ORDER

**I. Background and Legal Standard**

Presently before the Court is the Magistrate Judge's Report and Recommendation (R&R), [Doc. 119], recommending that Defendants' motion for summary judgment, [Doc. 101], be granted and the instant action be dismissed. Plaintiff Keith A. Sylvester has filed his objections in response to the R&R. [Doc. 123].

A district judge has broad discretion to accept, reject, or modify a magistrate judge's proposed findings and recommendations. United States v. Raddatz, 447 U.S. 667, 680 (1980). Pursuant to 28 U.S.C. § 636(b)(1), the Court reviews any portion of the Report and Recommendation that is the subject of a proper objection on a *de novo* basis and any non-objected portion under a "clearly erroneous" standard. "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive or general objections need

not be considered by the district court." <u>Marsden v. Moore</u>, 847 F.2d 1536, 1548 (11th Cir. 1988).

During the overnight hours of July 2-3, 2018, the home of Deborah and Harry Hubbard, Plaintiff's mother and stepfather, was gutted by a fire. Firefighters discovered Mr. and Ms. Hubbard's bodies in the home, and a forensic investigation indicated that the Hubbards had been strangled before their bodies were damaged by the fire. In the ensuing investigation, Defendant James Barnett, an Atlanta police detective, became suspicious of Plaintiff and ultimately determined that he had committed the murders. On December 29, 2018, police arrested Plaintiff based on an arrest warrant obtained by Defendant Barnett. Eventually, however, police determined that another individual, Cornelius Muckle, had committed the murders, and in August of 2020, Plaintiff was released after having spent fifteen months at the Fulton County Jail.

Plaintiff, while still detained, initiated this 42 U.S.C. § 1983 civil rights action, naming several defendants and raising a variety of claims. After screening the complaint pursuant to 28 U.S.C. § 1915A, the Court concluded that all of Plaintiff's claims, except his Fourth Amendment improper seizure claim, were subject to summary dismissal for failure to state a viable claim for relief. [Doc. 14]. This Court further concluded that Plaintiff's false arrest claim should be stayed until Plaintiff's

AO 72A
(Rev.8/82)

criminal charges were resolved.  Id.  In March 2020, Plaintiff submitted proof that the criminal charges against him had been dismissed, the Court reopened this matter, [Doc. 19], and the Fourth Amendment claim proceeded against Defendant Barnett.  Plaintiff later obtained counsel who filed an amended complaint, which added Defendant police officer Darrin Smith.  [Doc. 40].  After discovery, Defendants filed their motion for summary judgment.

## II. Discussion

Plaintiff agrees that Defendant Smith is entitled to judgment.  As such, the sole issue before the Court is whether Defendant Barnett (hereinafter referred to as Defendant) is also entitled to judgment.  The Magistrate Judge exhaustively reviewed the issues presented and determined that Defendant had at least arguable probable cause to arrest Plaintiff.  As a result, the Magistrate Judge concluded that Defendant is protected by qualified immunity and recommends that the Court grant his motion for summary judgment.

Plaintiff's amended complaint raises a claim that he was seized in violation of his Fourth and Fourteenth Amendment rights because Defendant omitted material and exculpatory information from the affidavit that he attached to his arrest warrant

application.[1]  "The Warrant Clause of the Fourth Amendment requires that warrant applications contain sufficient information to establish probable cause." Holmes v. Kucynda, 321 F.3d 1069, 1083 (11th Cir. 2003) (citing Franks v. Delaware, 438 U.S. 154, 164 (1978)).  That requirement assumes that the factual showing to support probable cause is true. Franks, 438 U.S. at 164-65.  Although not every statement in an application for a warrant needs to be objectively accurate, the affidavit must "be truthful in the sense that the information put forth is believed or appropriately accepted by the affiant as true." Id. at 165 (internal quotation marks omitted).  The requirements of Franks apply to both material false statements and material omissions. Madiwale v. Savaiko, 117 F.3d 1321, 1326 (11th Cir. 1997).  "[A] warrant violates the Fourth Amendment when it contains omissions 'made intentionally or with a reckless disregard for the accuracy of the affidavit.'" Id. at 1326-27 (quoting United States v. Martin, 615 F.2d 318, 329 (5th Cir. 1980)).

A law enforcement officer recklessly disregards the truth when he "should have recognized the error [in the warrant application], or at least harbored serious doubts" as to the facts contained therein. United States v. Kirk, 781 F.2d 1498, 1503 (11th Cir.

---

[1] Likely because of the confusing nature of civil Fourth Amendment seizure jurisprudence, Plaintiff understandably did not attach a label to his cause of action.  It appears, however, that Plaintiff's claim, challenging the validity of a warrant-based seizure, raises a § 1983 malicious prosecution claim. Williams v. Aguirre, 965 F.3d 1147, 1158 (11th Cir. 2020).

AO 72A
(Rev.8/82)

1986).  This is especially true when "the inconsistency [gives] the agent[ ] cause to investigate further."  Id.  Thus when an officer possesses information that would cause a reasonable officer to have serious doubts about whether a suspect has committed a certain crime, the officer is required to either take additional steps to allay those doubts before submitting the warrant application or include the contradictory information in the warrant application.  See Tillman v. Coley, 886 F.2d 317, 321 (11th Cir. 1989); Kirk, 781 F.2d at 1503; see also Kingsland v. City of Miami, 382 F.3d 1220, 1229 (11th Cir. 2004) (finding that an officer cannot turn a blind eye to "easily discoverable facts" and "choose to ignore information") *abrogated on other grounds by* Aguirre, 965 F.3d 1147.

Even where a law enforcement official recklessly omitted material facts from the affidavit in support of the arrest warrant, the official may nonetheless be entitled to qualified immunity if there is arguable probable cause for the arrest.  See Madiwale, 117 F.3d at 1327.  If "under all of the facts and circumstances, an officer reasonably could—not necessarily would—have believed that probable cause was present," the officer is entitled to qualified immunity.  Crosby v. Monroe Cnty., 394 F.3d 1328, 1332 (11th Cir. 2004); see also Grider v. City of Auburn, 618 F.3d 1240, 1257 (11th Cir. 2010) (explaining that a plaintiff must show that "reasonable officers in the same circumstances  and  possessing  the  same  knowledge  as  the  Defendants  could  have

5

believed that probable cause existed to arrest Plaintiff" (quoting <u>Kingsland</u>, 382 F.3d at 1232)).

Put another way, an officer is not automatically liable "for making an arrest that, when seen with the benefit of hindsight, turns out not to have been supported by probable cause." <u>Skop v. City of Atlanta</u>, 485 F.3d 1130, 1137 (11th Cir. 2007). As the Supreme Court has noted, "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials . . . should not be held personally liable." <u>Anderson v. Creighton</u>, 483 U.S. 635, 641 (1987). Thus, even if the officer did not in fact have probable cause, he nonetheless escapes liability if he had "arguable probable cause," that is, "reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[ ] could have believed that probable cause existed to arrest." <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1195 (11th Cir. 2002) (quotation and citation omitted). Significant to the discussion below, the Eleventh Circuit has repeatedly held that "what counts for qualified immunity purposes relating to probable cause to arrest is the information known to the defendant officers or officials at the time of their conduct, not the facts known to the plaintiff then or those known to a court later." <u>Wilkerson v. Seymour</u>, 736 F.3d 974, 978 (11th Cir. 2013) (quoting <u>Jones v. Cannon</u>, 174 F.3d 1271, 1283 n.4 (11th Cir. 1999)).

AO 72A
(Rev.8/82)

## A. Procedural Objections

In his objections, Plaintiff first lists several "procedural" objections.  Plaintiff first asserts that the Magistrate Judge improperly included evidence in his analysis that was "beyond the facts and evidence presented by the parties."  [Doc. 123 at 2]. Plaintiff, however, fails to explain how the Magistrate Judge went beyond the facts and evidence, and he has not given examples of what he is talking about.  As a result, this Court has no basis to sustain the objection.  In any event, in reviewing a motion for summary judgment the Court is entitled to consider materials in the record not cited by the parties.  Fed. R. Civ. P. 56(c)(3).

Plaintiff next faults the Magistrate Judge for failing to deem his statement of material facts as admitted because Defendant did not respond to them.  However, the Magistrate Judge found, and the undersigned agrees, that Plaintiff's Statement of Additional Material Facts, [Doc. 113-2], "which contains 292 paragraphs, is lengthy, contains copious amounts of immaterial information, and is argumentative," violates the Fed. R. Civ. P. 56.1 and the Court's Local Rules.  [Doc. 119 at 6].  The Magistrate Judge did, however, review all of Plaintiff's submissions and considered his relevant assertions and arguments.  Id. at 7.

Plaintiff further objects to the Magistrate Judge's exclusion of unspecified statements and responses, but he has not identified any legal support for the objection

7

or pointed to evidence that the Magistrate Judge failed to consider, again leaving this Court no basis to sustain the objection.  Finally, Plaintiff contends that this matter was improperly assigned to the Magistrate Judge for consideration under this Court's Standing Order 18-01.  However the Standing Order clearly states that "[a]ll prisoner actions containing a claim under 42 U.S.C. §§ 1331, 1332, 1346, 1361, 1983 or related statutes" are assigned to a Magistrate Judge.  The determination of whether a suit is a prisoner action is made at the time that the case is filed, and Plaintiff was a detainee at the time that he filed his suit.  Moreover, to the degree that Plaintiff had any objections to the Magistrate Judge continuing to preside over this matter after he was released from jail, he waived the objection by failing to raise it prior to the Magistrate Judge's recommendation that Defendant's motion for summary judgment be granted.

### B. Factual Objections

Plaintiff further contends that the facts do not support the Magistrate Judge's determination that Defendant is entitled to summary judgment.  According to Plaintiff, the Magistrate Judge ignored several facts that prove that Plaintiff could not have committed the murders.  However, having reviewed the totality of the record, this Court concludes that the Magistrate Judge is correct.

At the outset, this Court notes that the record is replete with examples of Plaintiff's suspicious and odd behavior during both the overnight period when the

8

Hubbards were murdered and the investigation of the crimes.  As recounted in much more detail by the Magistrate Judge, [Doc. 119 at 11-15], the day before the Hubbard's house burned down, Plaintiff purchased mothballs and rubbing alcohol which, Defendant learned, could be used to start a fire without leaving traces of an accelerant. On the night of the crimes, Plaintiff spent several hours driving to different convenience stores to play video poker where Defendant presumed Plaintiff knew surveillance cameras would record him.  When Defendant asked Plaintiff if he regularly drove around at night playing video poker, Plaintiff responded that it was the first time he had ever done so.  At one point that night, Plaintiff drove to the home where the fire was about to occur and then immediately left without getting out of the car.  He also stopped at a church parking lot, got out of his car, and appeared to count money, and he later gave what police considered to be an implausible explanation for the stop.

After police and fire department personnel were at the scene of the fire, Plaintiff arrived and immediately offered to provide officers dash-cam video evidence of his whereabouts during the time that the fire was set, and police officers at the scene grew suspicious that Plaintiff was trying to provide alibi evidence before he had even been questioned.  When Defendant arrived at the scene, other officers told him that they believed that Plaintiff acted suspiciously and his story did not make sense.

9

In addition, over the course of the investigation, Defendant learned further information that implicated Plaintiff.  For example, a fellow officer informed Defendant that there appeared to be deletions on the dash cam video that Plaintiff provided, and Plaintiff was a beneficiary of an insurance policy on the home that had burned.  Several family members of the victims told investigators that they were suspicious of Plaintiff and/or believed that he participated in the murders.  Taken together, all of the information that Defendant learned provided him with arguable probable cause to suspect that Plaintiff was involved in the Hubbard's deaths.

In his objections, Plaintiff points to other available evidence that indicated his innocence.  Plaintiff contends that, given the sequence of events, it is clear that he could not have strangled the victims or started the fire.  He contends that it is undisputed that he left the home where the fire/murders occurred at 8:00 PM on the evening before the victims' death, and sometime after Plaintiff left, one of the victims, Harry Hubbard, had a telephone conversation with Nyaira Walton, and Walton had reported that the victim seemed fine in that conversation.  However, Plaintiff has not presented any evidence that Defendant was aware of the phone call at the time that he prepared the arrest warrant affidavit and Defendant testified that he was not aware of it.  Moreover, given the fact that Defendant had been informed by other investigators that portions of the dash cam video supplied by Plaintiff seemed to have been deleted,

AO 72A
(Rev.8/82)

Defendant did not know without question at the time of the arrest warrant that Plaintiff could not have returned to the Hubbard's house.[2]

Plaintiff also argues that Defendant learned that the fire that destroyed the house was not a "slow-burn" fire that could have been set earlier and that no accelerants had been used in the fire. However, the record is nowhere near as clear as Plaintiff claims. Arson investigators told Defendant only that they had not detected accelerants, and they also told Defendant that mothballs soaked in alcohol could be used to start a fire without leaving traces of an accelerant.[3] Moreover, arson investigators did not inform Defendant that the fire was not a "slow burn" fire. Rather, well after Defendant obtained the arrest warrant, arson investigators told him that they could not provide a time-line for the fire, and that revelation did not rule out Defendant's speculation that Plaintiff had fashioned some sort of fuse device that would start the fire later. See [Doc. 108 at 25].

---

[2] Whether portions of the video were actually deleted is not relevant, as Plaintiff has not shown that Defendant was unreasonable in believing the deletions occurred.

[3] The Court also points out that, contrary to Plaintiff's assertion, the arrest warrant affidavit did not state that accelerants were used in the fire. Rather, it stated that the alcohol and mothballs Plaintiff purchased just before the fire could be used as an accelerant. Similarly, Plaintiff's argument that the box of mothballs was discovered unopened after the fire is not relevant because Defendant was unaware of that fact. Finally, given the other information Defendant relied on, excluding the mothballs and alcohol from the equation does not defeat a finding of probable cause.

11

Plaintiff also tries to take advantage of the confusion surrounding the issue of accelerants in this matter.  Apparently, Defendant believed that an accelerant in an arson investigation is material that is used to start a fire *and* that is detected by investigators after the fire is extinguished, and when investigators told Defendant no accelerants were used, he took that to mean that no accelerants were detected.  He testified that, in establishing probable cause, he "was pretty secure that [he] had solved the accelerant problem because of the mothballs and the alcohol." <u>Id.</u> at 23.  In other words, Defendant reasonably understood that when arson investigators told him no accelerants were used (or were present) that did not rule out the possibility that mothballs and alcohol were used to start the fire.

In the arrest warrant affidavit, Defendant stated, "[a]rson investigators also learned that the beneficiary of the house insurance [policy] was [Plaintiff]."  [Doc. 108-1 at 2].  However, it turned out that Plaintiff was *a* beneficiary rather than *the* beneficiary.  While Plaintiff contends that this distinction matters, it clearly does not. The question is whether Defendant believed that Plaintiff murdered the Hubbards when he prepared the warrant affidavit, and this rather minor misstatement in the affidavit—be it a mistake or an exaggeration—does not, by itself, create a disputed fact related to Defendant's bad faith.

12

Plaintiff's argument that the Magistrate Judge improperly credited "various statements that Plaintiff did not act appropriately for someone who had just lost his parents," [Doc. 123 at 9], is entirely irrelevant.  It does not matter how Plaintiff (or anyone else) normally behaved under such circumstances or whether Plaintiff's behavior was appropriate or typical for him.  What matters is how a reasonable police officer would react to Plaintiff's seemingly odd behavior, and comments from others that Plaintiff behaved in a strange manner for someone whose mother had just died would serve to reasonably strengthen Defendant's suspicions.

Finally, Plaintiff's arguments regarding the fact that several family members informed Defendant about their suspicions that Plaintiff was involved in the murders similarly miss the mark.  This Court acknowledges that some of the individuals that Defendant interviewed may have related implausible theories about the murders. Nonetheless, the fact that a majority of family members suspected that Plaintiff was involved clearly supports the finding that Defendant sought Plaintiff's arrest in good faith.

### C. Legal Objections

Plaintiff also raises what he calls "legal objections."  His first, that the Magistrate Judge erred by applying an arguable probable cause standard is flatly incorrect and relies on his unsubstantiated proposition that Defendant "intentionally

13

or recklessly lied" on the arrest warrant affidavit.  As discussed above, controlling case law is clear that Defendant is entitled to qualified immunity if he had arguable probable cause to arrest Plaintiff, and as the Magistrate Judge found, Plaintiff's contention that Defendant omitted material information from his affidavit is belied by the record.

Plaintiff's remaining legal objections are merely restatements of some of his factual objections.  This Court has reviewed those arguments and finds them to be unavailing.

## III. Conclusion

Based on the foregoing, the Court concludes that the Magistrate Judge is correct. Accordingly, Plaintiff's objections, [Doc. 123], are **OVERRULED**, the R&R, [Doc. 119], is hereby **ADOPTED** as the order of this Court, Defendants' motion for summary judgment, [Doc. 101], is **GRANTED**, and the instant action is **DISMISSED**.

**IT IS SO ORDERED**, this ___26th___ day of ___August___, 2022.

LEIGH MARTIN MAY
UNITED STATES DISTRICT JUDGE

14